IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN M. HARRIS, | ) | CASE NO. 5:10 CV 283 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Steven M. Harris, for disability insurance benefits and supplemental security income.[1]  The parties have consented to magistrate judge's jurisdiction.[2]

The Administrative Law Judge (ALJ), whose decision became the final decision of the Commissioner, found that Harris had severe impairments consisting of degenerative disc disease of the spine; asthma; bipolar disorder, not otherwise specified, and a personality disorder.[3]  The ALJ made the following finding regarding Harris's residual functional capacity (RFC):

---

[1] ECF # 1.

[2] ECF # 11.

[3] ECF # 13, Transcript ("Tr.") at 25.

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to lift, carry, push, pull, and foot pedal 10 pounds frequently and 20 pounds occasionally. He can walk for two blocks and needs to rest for 15 minutes. Sitting and stand can be performed at will. He can occasionally climb ladders, ropes, and scaffolds, kneel, crouch, and crawl. He can frequently climb ramps and stairs, balance, and stoop. He needs to avoid smoke and fumes. He can perform simple, repetitive tasks in a low stress environment meaning no high production quotas or piece work. He can have superficial interactions (with a specified purpose) with the public as defined in 20 CFR 404.1576(b) and 416.967(b).[4]

Based on that residual functional capacity, the ALJ found Harris incapable of performing any of his past relevant work as an unskilled press operator, low level semi-skilled work activity as a clerk in a convenient store, and security guard.[5]

Applying the medical-vocational grids in Appendix 2 of the regulations,[6] and further relying upon an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Harris could perform.[7] The ALJ, therefore, found Harris not under a disability.[8]

In his brief on the merits, Harris asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative

---

[4] *Id.* at 27.

[5] *Id.* at 31.

[6] *Id.*

[7] *Id*. at 32.

[8] *Id.*

record.[9]   Specifically, Harris argues that:  (1) the RFC findings are not supported by substantial evidence, and are inconsistent with the medical record;[10] (2) the ALJ did not sufficiently articulate his reasons for finding Harris not credible;[11] and (3) there was not substantial evidence to support the finding that there were other jobs in significant number that Harris could perform.[12]

After reviewing the record, the briefs of the parties, and the arguments advanced at oral argument, the Court concludes, for the reasons stated below, that the ALJ's ultimate finding of no disability is not supported by substantial evidence and, therefore, the matter must be remanded.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on

---

[9] ECF # 19.

[10] *Id*. at 4-5.

[11] *Id.* at 5-7.

[12] *Id*. at 7-12.

review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[13]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[14]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[15]

## 2.     *Treating source rule and good reason requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[13] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[14] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[16]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[17]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[18] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[19]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[20]  Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[21] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[22]  In deciding if such

---

[16] 20 C.F.R. § 404.1527(d)(2).

[17] *Id.*

[18] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[19] *Id.*

[20] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[21] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[22] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and

may rely on evidence not cited by the ALJ.[23]

In *Wilson v. Commissioner of Social Security*,[24] the Sixth Circuit discussed the treating

source rule in the regulations with particular emphasis on the requirement that the agency

"give good reasons" for not affording controlling weight to a treating physician's opinion in

the context of a disability determination.[25]  The court noted that the regulation expressly

contains a "good reasons" requirement.[26]  The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[27]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[28]  It drew a distinction between a

---

[23] *Id.* at 535.

[24] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[25] *Id.* at 544.

[26] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[27] *Id.* at 546.

[28] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[29] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[30] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[31]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[32] Second, the ALJ must identify for the record evidence supporting that finding." [33] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Wilson*, 378 F.3d at 546.

[33] *Id.*

[34] *Id.*

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[35]  The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[36]  In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[37] or that objective medical evidence does not support that opinion.[38]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[39]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[40]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such

---

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[36] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[37] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[38] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[39] *Blakley*, 581 F.3d at 407.

[40] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[41]

- the rejection or discounting of the opinion of a treating source without assigning weight,[42]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[43]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[44]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[45] and

---

[41] *Blakley*, 581 F.3d at 407-08.

[42] *Id.* at 408.

[43] *Id.*

[44] *Id.* at 409.

[45] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[46]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[47] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[48] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[49]

In *Cole v. Astrue*,[50] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[51]

---

[46] *Friend*, 375 F. App'x at 552.

[47] *Blakley*, 581 F.3d 399.

[48] *Id*. at 409-10.

[49] *Id*. at 410.

[50] *Cole v. Astrue*, Case No. 09-4309, 2011 WL 5456617 (6th Cir. Sept. 22, 2011).

[51] *Id.*, at *6.

**B.      Application of the standards**

As noted, Harris principally raises three issues: (1) the RFC findings, (2) the credibility determination, and (3) the finding that a significant number of other jobs exist that Harris could perform.  For the following reasons, I find that the matter may be adjudicated by solely addressing the RFC findings.

In that regard, Harris contests both the mental and physical limitations.  Initially, as concerns the mental limitations, the finding Harris emphasized at the oral argument,[52] the ALJ limited Harris to simple, repetitive tasks in a low stress environment meaning no high production quotas or piecework with superficial interactions (with a specified purpose) with the public.[53]  As concerns the physical limitations, the factor which Harris emphasized in his brief,[54] the ALJ found Harris capable of "light work," as defined in the regulations.[55]  I find that Harris's position on the mental, non-exertional limitations is dispositive.

Harris's argument concerning the mental, non-exertional limitations is that the RFC findings in this respect should have been more closely based upon the conclusions of Harris's

---

[52] *See*, ECF # 22 at 8-9. "Court:  'I take it your position is, [the ALJ] should have recognized even more limitations and offered more limitations to the vocational expert?' Ms. Newman:  'Well, yes, and those were non-exertional limitations.'  The Court:  ' Okay. So basically, ... [w]e are talking about non-exertional limitations.'   Ms. Newman: 'Non-exertional more than exertional....'"

[53] Tr. at 27.

[54] *See*, ECF # 19 at 4-5.

[55] 20 C.F.R. § 1567(b).

treating psychologist, Cynthia Seibel, Ph.D., and his therapist, Robert Waldsmith, L.P.C.[56] These sources prepared an evaluation in 2003, before the amended onset date of October of 2004.[57] Subsequent to this evaluation, Dr. Seibel and Waldsmith saw Harris periodically, with their therapy notes contained in the record.[58] These notes show compliance with medication and stability in condition, although at a diminished capacity.[59]

The record also contains the report of a consulting examining psychologist, Gary Sipps, Ph.D., and the testimony of Gottfried Spring, M.D., a medical expert who testified at the hearing.[60] These sources evaluated Harris as somewhat more functional than the 2003 evaluation of Dr. Seibel and Waldsmith. In particular, Dr. Spring, who conducted only a records review, stated that although Harris did not meet or equal a listing, he would require simple, low stress work with no quotas where he would have minimum contact with people.[61]

On this record, I note first that the ALJ set out the opinions of the various sources evaluating Harris's mental limitations and assigned weight to those sources.[62] As the ALJ

---

[56] *See*, ECF # 22 at 11. "The Court: 'Really, the place where you believe that the ALJ lost his way is that he didn't build more in based on what Dr. Seibel and the therapist, Mr. Wallsmith [sic], had to say, correct?' Ms. Newman: 'Correct.'"

[57] Tr. at 601-02.

[58] *Id.* at 521-32, 597, and 630-55.

[59] *Id.*

[60] *Id.* at 471-73, 726-30.

[61] *Id*. at 729-30.

[62] *Id.* at 29-30.

observes, he elected to give substantial weight to Dr. Spring's opinion, which was given above, because he "had all the evidence for review and is familiar with the evaluation of disability under the Social Security Act."[63]

Further, as the Commissioner states, in formulating the non-exertional finding, the ALJ also made reference to the fact that the State agency psychologists essentially corroborated Dr. Spring's conclusion by noting Harris was capable of performing simple, routine tasks in a low stress environment."[64]  The ALJ then specifically assigned partial weight to this assessment "because it is generally consistent with the updated mental health evidence."[65]

The ALJ, however, also stated that he did not fully credit the opinions of Dr. Seibel and Waldsmith that Harris's ability to sustain a normal workweek was limited and unlikely to improve over time.[66]  In that regard, the ALJ noted first that the treatment records from these sources were not consistent with their opinions.[67]  He further observed that Harris had "only visited his counselor [Waldsmith] once monthly and his psychiatrist [Seibel] every three months, an arrangement made at [Harris's] request."[68]

---

[63] *Id*. at 30.

[64] *Id.*

[65] *Id.*

[66] *Id*. at 29.

[67] *Id*.

[68] *Id*.

Applying the controlling standards, I find that substantial evidence does not support the ALJ's decision to give less than controlling weight to the opinions of Dr. Seibel and Waldsmith.  In particular, although the ALJ did note that these treating source opinions were inconsistent with the other evidence, such as their treatment notes, the ALJ did not then clearly articulate, as required,[69] the specific points of any inconsistencies between the treatment notes and the opinions.

As the Commissioner argues, the absence of such specificity may constitute harmless error where the ALJ's decision has met the "goal" of the regulations but not complied with its terms.[70] However, similar to the recent the Sixth Circuit's recent decision in *Cole v. Astrue*,[71] it cannot be said that the goal of § 1527(d)(2) has been met here when the ALJ's decision does not provide a clear understanding of the stated reason why the opinion of a treating source was discounted.

In light of this conclusion, I find it is not necessary to review the other issues raised here.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Harris had no disability.  Accordingly, the decision of the Commissioner denying Harris disability

---

[69] *Friend*, 375 F. App'x at 551.

[70] ECF # 16 at 15 (citation omitted).

[71] *Cole*, 2011 WL 5456617.

insurance benefits and supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[72] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:  November 14, 2011                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

---

[72] 28 U.S.C. § 2412(d)(1)(A).